UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **DONALD KIMERY, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| v. | ) | Case No. 11-CV-0249-CVE-PJC |
| | ) | |
| **BROKEN ARROW PUBLIC SCHOOLS, et al.,** | ) ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION AND ORDER

Now before the Court is Plaintiffs' Opposed Expedited Motion and Brief in Support for a Stay of Proceedings (Dkt. # 46). Plaintiffs ask the Court to stay all proceedings in this case pending completion of investigations by the Oklahoma State Department of Education (the Department) and the Oklahoma Attorney General's Office (OAG) of the matters described in plaintiffs' first amended complaint (Dkt. # 45). Defendants filed a brief in opposition (Dkt. # 48), and plaintiffs filed a reply brief (Dkt. # 50).

**I.**

Plaintiffs filed their original complaint (Dkt. # 2) on April 25, 2011, seeking relief for the alleged failure of the defendant school districts to pay scholarship amounts owed to special needs children under the Lindsey Nicole Henry Scholarship for Students with Disabilities Program Act, OKLA. STAT. tit. 70, § 13-101.1, et seq. (the Act). Plaintiffs alleged claims for relief based on: violations of their constitutional rights to free exercise, equal protection, due process, and freedom of speech under 42 U.S.C. § 1983; Title II of the Americans with Disabilities Act, 42 U.S.C. § 12133; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794a; violations of due process

and equal protection rights protected by the Oklahoma Constitution; and violation of Article V of the School Code of 1971, OKLA STAT. tit. 70, § 5-117. Plaintiffs requested relief in the form of "a declaration that Defendants' actions violate the United States and Oklahoma Constitutions, and state and federal statutes," "a permanent injunction requiring Defendants to comply with the law and disburse scholarships to Plaintiffs," compensatory damages, and costs and attorney fees. Dkt. # 2, at 59.

On May 26, 2011, the Oklahoma State Legislature passed amendments to the Act. The amendments, scheduled to become effective August 26, 2011, transfer responsibility for administration of the scholarship program from individual school districts to the Department. Dkt. ## 45, at 14; 46, at 2. The amendments also give "the Department the power to investigate how the school districts complied with the Act during the 2010-11 academic year." Dkt. # 46, at 2. If the Department determines that a district failed to comply with the provisions of the Act, "the Department shall have authority to reduce the amount of State Aid allocated to the school district or require the school district to make repayment to the Department." Id.; Dkt. # 46-1, at 10. Moreover, "[t]he Department shall make payment to the parent or legal guardian in the amount the school district failed to make . . . ." Id.

On June 13, 2011, defendants filed a motion to dismiss plaintiffs' complaint. In it, they argued that, because the Act violates both the Oklahoma and United States Constitutions, plaintiffs' complaint fails to state a claim upon which relief can be granted. Dkt. # 37, at 1. They argued that the Act violates the following provisions of the Oklahoma Constitution: the prohibition on use of public funds to aid sectarian institutions; the requirement that the Oklahoma Legislature maintain a system of public schools; the limitations on gifts of public funds; and the anti-discrimination

2

component of the Due Process Clause. Id. at 2. They also argued that the Act violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution. Id. Finally, they claimed that the school districts are the only proper defendants in this action. Id. In defendants' brief in support of their motion to dismiss, defendants stated that the May 26, 2011 "amendments do not address the constitutional defects in [the Act]." Dkt. # 38, at 10 n.1.

Plaintiffs filed an amended complaint on June 30, 2011, that reflected dismissal of several parties, changes to plaintiffs' allegations based on amendment of the Act, and additional arguments based on defendants' polices. Dkt. # 45. Plaintiffs' amended requests for relief were identical, other than the addition of a claim based on violation of Article XIII of the School Code of 1971, OKLA STAT. tit. 70, § 13-101.2.[1] Id. at 69. The following day, plaintiffs filed their motion to stay all proceedings.

Plaintiffs seek a stay of proceedings based on the May 26, 2011 amendments to the Act. They claim that, after passage of the amendments, they requested in writing that both the Department and the OAG investigate the defendants' treatment of plaintiffs with respect to the scholarship program. Dkt. # 46, at 3. They state that the Department has informed plaintiffs' counsel that the Department will initiate an administrative process by which plaintiffs will be able to request a Department investigation. Id.; see also Dkt. # 46-2, at 2. "According to the letter, the Department will give notice to the accused school districts of the allegations brought against them," the districts will be given an opportunity to respond, and, if the districts request a hearing, the Department will conduct a hearing at which parties will be permitted to testify. Id.; Dkt. # 46-2, at

---

[1]  Defendants filed a motion to dismiss the amended complaint, adopting the arguments set forth in their first motion. Dkt. # 49.

3

2. Plaintiffs also claim that the OAG may investigate defendants' compliance with the Act. Dkt. ## 46, at 4; 46-3, at 2.

Based on the changed circumstances following the amendments, plaintiffs seek a stay of all proceedings. They argue that the amendments enable state officials to resolve "many or perhaps all of the remaining claims" in the litigation, and claim that "[d]efendant school districts should have a much more limited ability to harm [p]laintiffs with respect to scholarships awarded in future years." Dkt. # 46, at 4. Because "the amendments allow the Department to investigate and rectify past injuries," they claim that the amendments will "enable [the Department] to resolve many of the questions in this lawsuit." Id. Second, plaintiffs argue for a stay based on their view that they will be made whole more quickly through state procedures than through federal litigation. Id. at 5. Finally, they argue that this "case involves complex federal and state constitutional issues that ought not to be addressed unless they must be." Id. They claim that, because their injuries may be addressed via the state procedures, "the constitutional questions in this case may become moot." Id. Therefore, they ask the Court to exercise its discretion to stay the proceedings pending the resolution of the state administrative proceedings.

## II.

"Abstention from the exercise of federal jurisdiction is . . . an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." Colorado River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976). "Traditionally, federal courts have shown reluctance to decline jurisdiction in the face of [the] 'virtually unflagging obligation of the federal courts to exercise the jurisdiction given to them.'" Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Kozeny, 115 F. Supp. 2d 1243, 1246 (D. Colo. 2000)(quoting Colorado

4

River, 424 U.S. at 817, 826). However, the obligation to exercise jurisdiction is not absolute. Id. Although "[i]t is well established that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction[,] . . . [i]t is equally well settled that a district court is under no compulsion to exercise that jurisdiction where the controversy may be settled more expeditiously in the state court." Will v. Calvert Fire Ins. Co., 437 U.S. 655, 662 (1978)(internal quotations omitted). In Colorado River, the Supreme Court of the United States recognized

> four categories of circumstances when it is appropriate for a federal court to abstain from exercising the jurisdiction with which it is endowed: 1) Pullman[2] abstention, in cases where a state court determination of pertinent state law might moot or change the posture of a federal constitutional question; 2) Thibodaux[3] abstention, where the federal court faces difficult questions of state law bearing on policy problems of substantial public importance transcending the case then at bar, or Burford[4] abstention, where federal review of the case would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern; 3) Younger[5] abstention, where federal jurisdiction has been invoked to restrain (through injunctive relief) state criminal proceedings, state nuisance proceedings antecedent to a criminal prosecution . . . , or collection of state taxes; and 4) Colorado River abstention, where considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation, favor deference to the concurrent state court proceeding.

Starzenski v. City of Elkhart, 842 F. Supp. 1132, 1134-36 (N.D. Ind. 1994). In support of their argument that it is within the Court's discretion to order a stay, plaintiffs rely on State Farm Mutual Auto Insurance Company v. Scholes, 601 F.2d 1151 (10th Cir. 1979), a Colorado River-abstention

---

[2] See R.R. Comm'n of Texas v. Pullman Co., 312 U.S. 496 (1941).

[3] See Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959).

[4] See Burford v. Sun Oil Co., 319 U.S. 315 (1943).

[5] See Younger v. Harris, 401 U.S. 37 (1971).

5

type case. They argue that because the amendments to the Act are scheduled to become effective on August 26, 2011, and will be followed by state administrative proceedings that will likely make them whole, there is no reason for the Court to reach the claims before it, which will likely become moot.

In Scholes, the Tenth Circuit acknowledged the occasional merit of deferring to ongoing state proceedings, and found that

> [a]mong the many considerations pertinent to the exercise of [discretion] are those of comity, the extent of disputed factual (as opposed to legal) issues involved, adequacy of relief available in [state proceedings], avoidance of maneuvers designed to throw sand into judicial machinery, the order in which the courts obtained jurisdiction, the need for comprehensive disposition of litigation, and the desirability of avoiding piecemeal litigation.

Id. Both parties expend considerable effort in arguing that the Scholes factors favor their respective positions. However, as the factors relied on in Scholes make evident, it and Colorado River[6] address the propriety of deference by a federal court to ongoing state proceedings in which similar issues are being addressed, based on "regard for federal-state relations which govern in situations involving the contemporaneous exercise of concurrent jurisdictions" and "considerations of wise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." Colorado River, 424 U.S. at 817 (internal quotations omitted). They do not apply

---

[6]  Similar to Scholes, Colorado River requires that courts considering granting a stay in light of pending state proceedings consider "a list of non-exhaustive factors that includes at least the following: (1) whether either court has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the courts obtained jurisdiction; (5) the vexatious or reactive nature of either the federal or the state action; (6) the adequacy of the state court action to protect the [federal] plaintiff's rights; and (7) whether the party opposing abstention has engaged in impermissible forum shopping." Global Client Solutions, LLC v. Fluid Trade, Inc., No. 10-CV-0123-CVE-TLW, 2010 WL 2690373, at * 5 (N.D. Okla. July 1, 2010).

to this case because: 1) there is no state action pending; and 2) the potential state administrative proceedings will not address the questions of law and fact that consideration of plaintiffs' amended complaint would require.  Thus, this is not a case where Colorado River/Scholes abstention is appropriate.  E.g., Gen. Steel Domestic Sales, LLC v. Steelwise, LLC, 07-cv-01145-DME-KMT, 07-02170-DME-KMT, 2008 WL 1744276, at * 3 (D. Colo. April 11, 2008)(proceeding sufficiently parallel for purposes of Colorado River if "the suits involve the same parties, arise out of the same facts and raise similar factual and legal issues.").  Contrary to plaintiffs' argument, the Court does not find support in Scholes for a stay in this case, and will not expand the Colorado River doctrine to cover the current situation.[7]  E.g., Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 463 (4th Cir. 2005)(where courts base an abstention decision not on a constitutional basis but only on that of "wise judicial administration, . . . the Supreme Court has admonished that it be applied parsimoniously").

**IV.**

However, the Court's inquiry does not end with Scholes.  See Rosenbauer Am., LLC v. Advantech Serv. & Parts, LLC, 437 F. Supp. 2d 1081, 1084 (D.S.D. 2006)("[t]he inapplicability of abstention doctrines in this case does not preclude a stay").  Plaintiffs' claims for injunctive and declaratory relief appear likely to become moot once the amendments to the Act take effect on

---

[7]   The Court also rejects plaintiffs' arguments that a stay is supported by the "principle of constitutional avoidance" recently articulated in Northwest Austin Municipal Utility District No. One v. Holder, 129 S. Ct. 2504 (2009).  In Northwest Austin, the Court noted that the "Court will not decide a constitutional question if there is some other ground upon which to dispose of the case."  Id. at 2513.  This principle dictates that, where possible, courts should not reach constitutional issues in a case when other grounds for a decision are available.  Although that principle underlies some abstention theories, it does not constitute a separate reason for a stay.

7

August 26, 2011, as the school districts will no longer be implementing the scholarship program. Moreover, the amendments provide a means by which plaintiffs may be made whole for funds allegedly owed to them for the 2010-11 school year that form the basis of plaintiffs' damages claim, and the state has expressed its intention to create an administrative process for the recovery of those funds. Thus, it appears likely that plaintiffs will have an alternate means of seeking relief for their damages claims. If they are successful, and are made whole for their asserted damages, their claims before the Court will be moot, and the Court will lack jurisdiction.

In addition to abstention doctrines, district courts also have a more general discretion to defer proceedings pending an outcome in another forum. In Landis v. North American Co., 299 U.S. 248 (1936), the Supreme Court held that:

> [t]he exertion of this power calls for the exercise of a sound discretion. Where it is proposed that a pending proceeding be stayed, the competing interests which will be affected by the granting or refusal to grant a stay must be weighed. Among these competing interests are the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay.

Id. at 254-55. Applying Landis, courts have recognized that "a trial court may, with propriety, find it is efficient for its own docket and the fairest course for the parties to enter a stay of an action before it, pending resolution of independent proceedings which bear upon the case. This rule applies whether the separate proceedings are judicial, administrative, or arbitral in character, and does not require that the issues in such proceedings are necessarily controlling of the action before the court. . . . In such cases the court may order a stay of the action pursuant to its power to control its docket and calendar and to provide for a just determination of the cases pending before it." Leyva v. Certified Grocers of California, Ltd., 593 F.2d 857, 864 (9th Cir. 1979); see also, e.g., Rice v.

Astrue, 2010 WL 3607474, at * 2 (D.S.C. Sept. 9, 2010)(holding decision in abeyance until decision by Fourth Circuit in related matter).

However, "[a] stay is not a matter of right, even if irreparable injury might otherwise result." Indiana State Police Pension Trust v. Chrysler LLC, 129 S. Ct. 2275, 2276 (2009). "It is instead an exercise of judicial discretion, and the 'party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion.'" Id. "The propriety of a stay is dependent upon the circumstances of the particular case, and the traditional stay factors contemplate individualized judgments in each case." Id. at 2277 (internal quotations omitted). Landis dictates that courts making such judgments take into account hardship to the parties, as well as the "orderly course of justice." 299 U.S. at 244-45. And the Tenth Circuit has instructed courts to consider the following factors before granting a stay: "whether the [moving party is] likely to prevail in the related proceeding; whether, absent a stay, the [moving party] will suffer irreparable harm; whether the issuance of a stay will cause substantial harm to the other parties to the proceeding; and the public interests at stake." United Steelworkers of Am. v. Oregon Steel Mills, Inc., 322 F.3d 1222, 1227 (10th Cir. 2003).

Because it does not appear to be disputed that defendants failed to comply with the Act – because, they allege, of its unconstitutional nature – there seems little doubt that plaintiffs will prevail at those hearings. The Court does not find that the parties will suffer hardship from the grant of a stay. The fact that plaintiffs are the moving party eliminates some concerns that may generally attach to a stay. See, e.g., Grice Eng'g, Inc. v. JG Innovations, Inc., 691 F. Supp. 2d 915, 921 (W.D. Wis. 2010)(basing its denial of stay in part on the plaintiff's inability to prosecute its case and obtain relief while a stay was pending). Although defendants may prefer the resolution of their

constitutional defenses against the Act, it is within their power to bring their own claims based on what they allege to be an unconstitutional statute.[8] Moreover, granting a stay would further the Court's interest in judicial economy and the avoidance of advisory opinions, as it appears likely that several of plaintiffs' claims will be moot as of the date the statute becomes effective, and that the remainder will be resolved through the proposed administrative process. See, e.g., Inst. for Wildlife Protection v. U.S. Fish & Wildlife Serv., 2007 WL 4118136, at * 11 (D. Or. July 25, 2007)(where alternate review process was pending that could moot one of the plaintiff's claim for relief, a stay of proceedings would promote judicial economy and efficiency); Larios v. Perdue, 306 F. Supp. 2d 1190, 1200 (N.D. Ga. 2003)(granting stay where consideration of voting plan by review panel could moot plaintiff's claims).

Thus, based on its power to control its docket, the Court will stay the proceedings in the case pending the outcome of the state administrative proceedings. It is true, as defendants note, that there is an alternate method of bringing about this same result – namely, that plaintiffs voluntarily dismiss their claims pursuant to Fed. R. Civ. P. 41(a). However, that decision is left to plaintiffs, and the grant of a stay furthers the Court's interest in judicial economy and avoidance of advisory opinions. Therefore, a stay, although not the only means by which plaintiffs could avoid review, is appropriate.

---

[8] Although it may be true that the defenses available to defendants in any administrative proceedings are different than those available in this Court, defendants have an array of legal remedies with which to challenge the Act or the administrative mechanism created by the state. The Court does not find that an additional action by defendants based in whole or in part on the arguments made in their motion to dismiss would be an inefficient use of judicial resources, as the suit at that point would be a live controversy, and would be a better means of resolving the controversy between the parties.

10

The Court takes seriously its obligation not to allow stays which are "immoderate or of an indefinite duration," and to grant only those stays "spent within reasonable limits." Wedgeworth v. Fibreboard Corp., 706 F.2d 541, 545 (5th Cir. 1983). This case puts the Court in the unusual position of granting a stay in anticipation of proceedings not yet commenced, and for that reason the Court is all the more sensitive to the need to monitor closely the progress of those proceedings. Plaintiffs have advised the Court that the amendments to the Act take effect August 26, 2011, that the State will thereafter provide the alternate administrative remedy, and that plaintiffs expect that remedy to move more quickly than the action would through federal court. Should it become clear that the administrative proceedings will not "be concluded within a reasonable time," or are not proceeding with "diligence and efficiency," Leyva, 593 F.2d at 864, the Court will lift the stay and will proceed to consider plaintiffs' claims.

**IT IS THEREFORE ORDERED** that Plaintiffs' Opposed Expedited Motion and Brief in Support for a Stay of Proceedings (Dkt. # 46) is **granted**. The proceedings in this case shall be stayed pending further order by the Court.

**IT IS FURTHER ORDERED** that, no later than **October 31, 2011**, plaintiffs shall file a status report on the state administrative proceedings.

**DATED** this 18th day of July, 2011.

*[signature]*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT